IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
CCG DIVISION

ALICIA DAVENPORT,                    *

    Plaintiff,                      *

vs.                                  *

COLUMBUS CONSOLIDATED               *
GOVERNMENT and GREGORY                      CASE NO.4:14-CV-275 (CDL)
COUNTRYMAN, individually and in *
his official capacity as
Marshal of Muscogee County,         *
Georgia,

    Defendants.

                    O R D E R

    Plaintiff Alicia Davenport, a black female, is employed by

Defendant Columbus Consolidated Government ("CCG").  She filed

this action pursuant to 42 U.S.C. § 1983 alleging that CCG and

Marshal Gregory Countryman violated her rights under the Equal

Protection Clause of the Fourteenth Amendment when Countryman

discriminated and retaliated against her based on her race and

gender.[1]

    After CCG filed a motion to dismiss for failure to state a

claim (ECF No. 8), Davenport sought to improve her chances and

filed a motion to amend her complaint to add discrimination and

_____

[1] Davenport initially sued several other CCG employees but later agreed to
dismiss all individual defendants except Countryman.   Joint Stipulation of
Dismissal, ECF No. 2; Pl.'s Resp. to CCG's Mot. to Dismiss 1, ECF No. 16.
Davenport sued Countryman in his individual and official capacities.   The
parties proceed as though Davenport's official capacity claims against
Countryman are claims against CCG.

retaliation claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and retaliation claims under 42 U.S.C. § 1981 (ECF No. 17). Davenport also seeks to stay this litigation until she has fully exhausted her rights to administrative review by CCG and until criminal charges pending against her that are related to the claims she asserts in this action have been finally adjudicated (ECF No. 19).

For the reasons that follow, CCG's motion to dismiss Davenport's Fourteenth Amendment claims for race and gender discrimination brought pursuant to § 1983 is granted; Davenport's motion to amend her complaint to assert claims against CCG pursuant to Title VII is granted, but her motion to amend to assert a retaliation claim against CCG pursuant to §§ 1981 and 1983 is denied; and Davenport's motion to stay this action after the amended complaint and answers to it are filed is granted.

STANDARDS

Davenport's motion for leave to amend her complaint should be granted unless the proposed amended complaint fails to state a claim and amendment is therefore futile. *See* Fed. R. Civ. Pro. 15(a). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(quoting *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007)).  The "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Twombly*, 550 U.S. at 555.  Thus, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable." *Id*. at 556.

FACTUAL ALLEGATIONS

Davenport's proposed amended complaint (ECF No. 17-1) contains the following allegations.

**I.   Davenport's Initial Employment**

Davenport began her employment with CCG as a police officer for the CCG Police Department in 2004.  In 2006, Davenport complained to CCG and the EEOC that the CCG Police Department discriminated and retaliated against her based on her race and gender.  In response to these complaints, Davenport was transferred to the CCG Marshal's Office as a Deputy Marshal. She was assigned to field services under Marshal Gregory Countryman.

During her employment at the Marshal's Office, Davenport verbally complained to Countryman several times that he failed to promote her and failed to give her the same job "perks" as male deputies.  Proposed First Am. Compl. ¶ 14, ECF No. 17-1. In response, Countryman addressed the entire squad and promised

to be fairer.   According to Davenport, however, Countryman continued to deny her promotions and other perks provided to male employees.   Notwithstanding this alleged discriminatory treatment, Davenport earned several accolades and honors during her time at the Marshal's Office.

## II.   Davenport's Incident with Dunlap and Punishment

On October 28, 2013, Davenport responded to a three-car accident and was informed that the accident resulted in injuries.   In her haste to assess the injuries, Davenport failed to put on her microphone before entering the scene.   While Davenport was assisting victims, Doug Dunlap, a white male CCG police officer, arrived and took over the investigation.   Dunlap refused Davenport's assistance, so Davenport decided to leave the scene. As Davenport was pulling her car away, Dunlap leapt in front of the vehicle to prevent her from leaving.   He initiated a confrontation, but Davenport pulled her car away from Dunlap and left the scene.

Dunlap later claimed that Davenport made inappropriate comments as she walked to her vehicle and that she struck his right leg with her patrol car.   Davenport denies both claims. In fact, on the day of the incident, Sergeant R.L. Bowers investigated Dunlap's claims by interviewing witnesses at the scene and retrieving the video from Davenport's patrol car. Sgt. Bowers determined that Dunlap's claims were "[n]ot

[s]ustained." Proposed First Am. Compl. ¶ 18.

Notwithstanding Sgt. Bower's conclusion, Marshal Countryman suspended Davenport for five days without pay plus twelve months of probation for not wearing her microphone and "conduct unbecoming [of] an officer." *Id*. ¶ 19. Davenport objected to the punishment. Additionally, Davenport asked Countryman if she could use her vacation days for the suspension in lieu of sacrificing five days of pay. She knew that Countryman had let white male deputies with spouses do so. Davenport emphasized that she was a single mother of three and that five days without pay would be a hardship for her family. Although Countryman admitted that he had allowed male deputies to use vacation days in lieu of suspensions without pay, Countryman denied Davenport's request.

In response, Davenport complained to Countryman that she was being discriminated against because she was a black female. Countryman reacted with hostility. He told Davenport that she could appeal the suspension, but added that she had abandoned her oath and could be charged with a crime for the incident with Dunlap. Davenport believed that Countryman was threatening to initiate criminal charges against her if she appealed her suspension.

### III. Davenport's First Grievance and Countryman's Response

Davenport nevertheless filed an appeal under CCG's Fair

Treatment Policy regarding her five-day suspension and Countryman's alleged discriminatory conduct. Davenport also hand delivered typed letters stating her grievance to Countryman, Sgt. Bowers, and other CCG officials. The following day, Countryman contacted the Georgia Bureau of Investigation to have criminal charges brought against Davenport for the incident with Dunlap. The GBI launched a criminal investigation, and Countryman placed Davenport on administrative assignment with pay until the investigation was complete. According to Davenport, Countryman subsequently made false reports to the Georgia Peace Standards and Training Counsel that Davenport was suspended because of an ongoing criminal investigation and that Davenport refused to cooperate with the investigation.

On December 12, 2013, the State of Georgia charged Davenport with a misdemeanor for reckless conduct and a felony for violation of her oath of office. Countryman suspended Davenport without pay, pending the resolution of the criminal charges. He also gave Davenport a negative performance evaluation even though she was not due for an evaluation. On the same day, Davenport received the Fair Treatment Report Response from human resources director Reather Hollowell, upholding Countryman's five-day suspension without pay. The Response stated that City Manager Isaiah Hugley had waived his right of review and approved a direct appeal to CCG's Personnel

Review Board.   Davenport timely filed the appeal to the Board,
and she requested a hearing regarding her five-day suspension
without pay grievance.

## IV.   Davenport's Second Grievance and EEOC Complaint

On December 30, 2013, Davenport filed a second grievance
alleging that Countryman was retaliating against her in the
following ways: (1) showing a video of an in-office argument
between Davenport and Deputy Marshal Shannon Griffin to persons
outside of law enforcement; (2) disciplining Davenport more
harshly than Griffin for this argument; (3) failing to prosecute
Griffin for making "terroristic threats" against Davenport; (4)
showing the patrol car video from the incident between Davenport
and Dunlap to persons outside of law enforcement; (5) describing
Davenport as "an angry black woman;" (6) claiming that Davenport
had been counseled for having a negative attitude toward co-
workers in her December 2013 negative performance review when
Davenport had not been counseled; and (7) receiving a copy of
Davenport's 2006 grievance against the CCG police department.
Proposed First Am. Comp. ¶ 30.

On April 4, 2014, although her state criminal charges and
appeal to the Personnel Review Board were still pending,
Davenport filed a charge of discrimination with the Equal
Employment Opportunity Commission.   Davenport was issued a
Notice of Right to Sue on August 8, 2014 and filed this action

7

on November 3, 2014.

Currently, Davenport's hearing with the Personnel Review Board regarding her five-day suspension without pay has been stayed pending resolution of the state criminal charges against her.  The decision appears to be indefinitely stalled because CCG alleges that Davenport has not even been indicted on the criminal charges.  Def.'s Resp. to Pl.'s Mot. to Stay 5, ECF No. 23.  Davenport remains employed by CCG, but she is on indefinite suspension without pay.

DISCUSSION

I.   **Motion to Dismiss and Motion to Amend**

Davenport claims that her five day suspension and her indefinite suspension without pay related to her criminal charges were imposed by Countryman because of her race and gender and in retaliation for her complaints of race and gender discrimination.  Specifically, she seeks to assert the following claims against CCG in her amended complaint: (1) gender discrimination in violation of Title VII and the Equal Protection Clause pursuant to § 1983; (2) retaliation in violation of Title VII and § 1981 pursuant to § 1983; and (3) race discrimination in violation of Title VII, § 1981 and the Equal Protection Clause pursuant to § 1983.[2]

---

[2] Davenport initially asserted a retaliation claim under the Equal Protection Clause, but she now concedes that she may not bring such a claim.  Pl.'s Resp. 4, ECF No. 16.  Davenport also seeks leave to

1.   *Davenport's § 1983 Claims Against CCG*

Davenport's discrimination and retaliation claims against CCG based on violations of the Fourteenth Amendment and § 1981 must be asserted pursuant to § 1983. *See Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 731 (1989)(declaring that a plaintiff must use § 1983 to enforce § 1981 rights against state actors); *Butts v. Cty. of Volusia*, 222 F.3d 891, 894 (11th Cir. 2000) (rejecting the argument that *Jett* was superseded by the Civil Rights Act of 1991). And for CCG to be liable for Countryman's alleged discrimination and/or retaliation under § 1983, CCG's policy or custom must have been a moving force in causing the violations. *See Griffin v. City of Opa-Locka*, 261 F.3d 1295, 1307 (11th Cir. 2001)(citing *Monell v. Dep't of Soc. Servs. of N.Y.C.*, 436 U.S. 658, 663 (1978))("[A] municipality cannot be held liable for the actions of its employees under § 1983 based on a theory of respondeat superior."); *see also Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 403-04 (1997)(reaffirming that a municipality is liable when its official policy or custom causes the violation). There is no allegation here that CCG had a policy or custom that had any causal connection to Countryman's alleged discrimination or retaliation toward Davenport.

---

amend her complaint to add a § 1981 retaliation claim against Countryman in his individual capacity. Countryman did not object to the amendment, so the Court will allow it.

In the absence of a discriminatory or retaliatory policy or custom, an official's single decision can constitute the official policy of a municipality but only if the official had the "final policymaking authority" over the relevant decision. *Scala v. City of Winter Park*, 116 F.3d 1396, 1399-1400 (11th Cir. 1997). An "official does not have final policymaking authority over a particular subject matter when that official's decisions are subject to meaningful administrative review." *Carter v. City of Melbourne, Fla.*, 731 F.3d 1161, 1166-67 (11th Cir. 2013)(quoting *Morro v. City of Birmingham*, 117 F.3d 508, 514 (11th Cir. 1997)).

The Court finds that it may consider CCG's Fair Treatment Policy attached to CCG's motion to dismiss in evaluating the motion to dismiss and motion to amend because it is central to Davenport's claims, and Davenport does not dispute its authenticity. *See Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005). Moreover, the Policy is consistent with Davenport's allegations regarding the Fair Treatment review. Proposed First Am. Compl. ¶¶ 28, 29, & 32. CCG's Fair Treatment Policy provides for meaningful review of Countryman's employment decisions, and Davenport does not plausibly allege facts to the contrary. Under the Policy, all CCG employees may appeal any unfair treatment to CCG officials. *See* Attachment to Def.'s Mot. to Dismiss, Ex. 1, Fair Treatment Policy 1, ECF No. 8-2.

Adverse actions are first appealed to the human resources
director. *Id.* at 2-3. The City Manager may review the action
at his option. *Id.* at 3. If the employee remains dissatisfied
after this review, the employee may appeal the decision to the
Personnel Review Board. *Id.*

Davenport could have appealed any of Countryman's
employment decisions under the Policy—the five-day suspension,
the administrative assignment based on the criminal
investigation, and the suspension without pay based on the
criminal charges. In fact, Davenport did appeal Countryman's
five-day suspension decision. The fact that Davenport did not
pursue appeals regarding the other two decisions does not mean
that meaningful administrative review was unavailable. Because
Davenport does not plausibly allege that meaningful
administrative review did not exist for her complaints about
Countryman's employment actions, the Court must conclude that
Countryman is not the final policymaker for CCG regarding those
adverse employment actions.

The Court rejects Davenport's argument that she has been
denied meaningful review because the administrative review of
her claims has been stayed pending a resolution of her criminal
charges. Davenport has alleged no facts suggesting that this
delay is an attempt to unreasonably deny her administrative
review. Ironically, she seeks a stay of this civil action based

in part on the complications related to the existence of the criminal charges against her.

Davenport is correct that there is still the possibility that CCG could be responsible for discriminatory and retaliatory conduct if the Personnel Review Board, on review of her appeal of her five-day suspension, bases its decision upon an improper discriminatory or retaliatory motive.  But no current factual basis exists for such speculation.  Thus, any claim of this type is premature.  Based on the present alleged facts, Davenport's claims asserted against CCG pursuant to § 1983 must be dismissed, and her § 1981 retaliation claim against CCG, which she seeks to assert in her amended complaint pursuant to § 1983, is not plausible and thus cannot be permitted.

2.  *Davenport's Title VII Claims*

Davenport seeks to amend her complaint to add Title VII discrimination and retaliation claims.  To succeed on her motion to amend Davenport's proposed amended complaint must contain "factual allegations. . . [that] plausibly suggest that [Davenport] suffered an adverse employment action due to intentional. . . discrimination" or retaliation for protected activity.  *Surtain v. Hamlin Terrace Found.*, 789 F.3d 1239, 1246 (11th Cir. 2015)(per curiam).  The Court grants Davenport's motion to amend to add all three Title VII claims because Davenport has stated plausible claims of gender discrimination,

race discrimination, and retaliation under Title VII.  Amendment therefore is not futile and thus the motion is granted.  Fed. R. Civ. P. 15(a); *see Bryant v. Dupree*, 252 F.3d 1161, 1163-64 (11th Cir. 2001)(per curiam).

## II.  Motion to Stay

Davenport argues that the Court should stay this litigation for two reasons.  First, Davenport contends that the Court should stay the litigation until there is a final decision by CCG regarding her five-day suspension so that she may bring her § 1983 claims against CCG.  As discussed above, however, Davenport fails to allege any facts plausibly suggesting that CCG will adopt Countryman's discriminatory motive or that the review will not be meaningful.  Thus, the fact that administrative review has not been exhausted does not authorize a stay.

Second, Davenport argues that a stay is necessary to preserve her constitutional rights to due process and against self-incrimination.  The Court finds this argument persuasive. Although a bare assertion of Fifth Amendment privilege is an insufficient basis for a stay, *United States v. Lot 5, Fox Grove, Alachua Cty. Fla.*, 23 F.3d 359, 364 (11th Cir. 1994), the stay of a civil proceeding pending the resolution of a related criminal case may be appropriate when "special circumstances" require it in the "interests of justice."  *Id.* (quoting *United*

*States v. Kordel*, 397 U.S. 1, 12 & n.27 (1970)).   The Court
finds special circumstances exist here.   Davenport contends that
the criminal charges she currently faces were brought against
her at the instigation of her boss, Marshal Countryman.   She
further alleges that he insisted that the GBI pursue the charges
because he had a discriminatory animus against her as a black
female and in retaliation for her complaints about
discrimination.   Thus, Countryman's conduct regarding the
assertion of these criminal charges is central to Davenport's
claims in this civil action; and perhaps more significantly, her
explanation of her conduct is likewise essential to the pursuit
of her civil claims.   To fully pursue those claims, she must
risk potential incrimination in the criminal case to which she
would otherwise not be exposed absent this related civil action.
Accordingly, the Court finds that discovery in this action
should be stayed pending a resolution of the criminal charges.

**CONCLUSION**

In conclusion, the Court grants CCG's motion to dismiss
Davenport's claims against CCG that are asserted pursuant to
§ 1983 (ECF No. 8).   The Court also denies Davenport's motion
for leave to amend to add a § 1981 retaliation claim against CCG
pursuant to § 1983 (ECF No. 17).[3]

---

[3]  Today's rulings do not preclude Davenport from asserting § 1983
claims against CCG in the future if the final decisionmaker, the

The Court grants Davenport's motion for leave to amend to add her Title VII claims against CCG and her § 1981 retaliation claim against Countryman in his individual capacity (ECF No. 17). Davenport shall electronically file her amended complaint, which shall be consistent with the rulings in this Order, within fourteen days of today's order. Defendants shall answer the amended complaint as required by law.

After the amended complaint and any responsive pleadings are filed and served, this action shall be stayed pending the resolution of the current criminal charges against Davenport (ECF No. 19). Davenport shall file a status report every 90 days informing the Court of the status of those charges.

IT IS SO ORDERED, this 25th day of September, 2015.

S/Clay D. Land
_____
CLAY D. LAND
CHIEF U.S. DISTRICT COURT JUDGE
MIDDLE DISTRICT OF GEORGIA

---

Personnel Review Board, makes decisions that are unlawfully discriminatory and/or retaliatory.